**WARWICK TOWERS COUNCIL OF CO–OWNERS, by and through ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant**

v.

**PARK WARWICK, L.P., Park Warwick Investments, L.L.C., and Park Hotel Investments, L.L.C., Appellees.**

No. 14–05–00254–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 8, 2009.

Shahin A. Khoshbin, Dallas, TX, for Appellants.

Timothy Ray Hightower, Ruth Ellen Piller, Houston, TX, for Appellees.

Panel consists of Justices ANDERSON, GUZMAN, and BOYCE.

## OPINION ON REMAND

WILLIAM J. BOYCE, Justice.

Warwick Towers Council of Co–Owners (the "Council"), acting by and through St. Paul Fire & Marine Insurance Company, appeals from a summary judgment granted in favor of Park Warwick L.P., Park Warwick Investments, L.L.C., and Park

Hotel Investments, L.L.C. (collectively, the "Hotel Appellees"). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## Background

The Warwick Hotel and the Warwick Towers condominium are located across Fannin Street from one another in Houston. Both buildings were damaged in June 2001 when heavy rains from Tropical Storm Allison inundated the city.

St. Paul contends the hotel had a flood barrier system in place in June 2001 to prevent water at street level from pouring down a loading dock ramp into the hotel's basement. St. Paul alleges the hotel failed to use this barrier during the storm, which allowed water to enter the hotel's basement; travel through a connecting tunnel that runs under Fannin Street; reach the condominium's basement; and cause extensive damage. *See Warwick Towers Council of Co–Owners v. Park Warwick, L.P.*, 244 S.W.3d 838 (Tex.2008) (per curiam). The Hotel Appellees dispute whether such a barrier existed in June 2001.

The Council and others sued the Hotel Appellees and asserted claims for negligence, nuisance, and trespass based on water damage to the condominium from Tropical Storm Allison. St. Paul also asserted a subrogation claim against the Hotel Appellees based on payments it made as the condominium's insurer for water damage in connection with the storm. *See generally Ortiz v. Great S. Fire and Cas. Ins. Co.*, 597 S.W.2d 342, 344 (Tex.1980). St. Paul's subrogation claim was predicated on causes of action against the Hotel Appellees for negligence, nuisance, and trespass.

The Hotel Appellees filed a motion for partial summary judgment. Among other grounds, they asserted that St. Paul's claim is foreclosed by a waiver of subrogation contained in a 1980 easement agreement. The trial court signed an interlocutory order in May 2004 granting partial summary judgment in favor of the Hotel Appellees on St. Paul's subrogation claim, and on the Council's nuisance and trespass claims. The Council's negligence claim remained unresolved.

█ In February 2005, the trial court signed an order dismissing all causes of action asserted by the Council and other plaintiffs against the Hotel Appellees with prejudice pursuant to a settlement. Dismissal of the Council's causes of action did not extinguish St. Paul's subrogation claim because an insurer becomes a *pro tanto* owner of the insured's cause of action when the insurer pays part of the insured's loss. *See Prudential Prop. & Cas. Co. v. Dow Chevrolet–Olds, Inc.*, 10 S.W.3d 97, 102–03 (Tex.App.-Texarkana 1999, pet. dism'd); *see also In re Romero*, 956 S.W.2d 659, 661 (Tex.App.-San Antonio 1997, orig. proceeding) (from point of payment forward, viability of insurer's cause of action does not rise and fall with fate of its insured's cause of action) (citing *Thoreson v. Thompson*, 431 S.W.2d 341, 347 (Tex.1968)); *Cox v. Realty Dev. Corp.*, 748 S.W.2d 492, 494 (Tex.App.-Dallas 1988, no writ) (dismissal of insured's cause of action did not extinguish insurer's action).

The February 2005 order caused the interlocutory summary judgment on St. Paul's subrogation claim to become final and appealable. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995).[1] St. Paul filed a notice of appeal in

---

**1.** The Hotel Appellees did not seek summary judgment on the merits of the negligence cause of action, or on an alleged Water Code violation included in an amended petition filed by the Council in October 2004. The summary judgment nonetheless became final

its insured's name. The notice of appeal did not name St. Paul.

This court dismissed St. Paul's appeal, concluding that a notice of appeal filed solely in the insured's name was ineffective to perfect an appeal as to that portion of the trial court's final judgment addressing St. Paul's separate subrogation claim. *Warwick Towers Council of Co–Owners v. Park Warwick, L.P.,* 218 S.W.3d 149 (Tex. App.-Houston [14th Dist.] 2007), *rev'd,* 244 S.W.3d 838 (Tex.2008) (per curiam). The Texas Supreme Court reversed this court's judgment and remanded, holding that St. Paul made a bona fide attempt to appeal from the dismissal of its subrogation claim; should have been allowed to amend the notice of appeal to name itself as the appellant; and should have its appeal decided on the merits. *Warwick Towers Council of Co–Owners,* 244 S.W.3d at 839–40.[2]

We now address the merits of St. Paul's appeal challenging the trial court's grant of summary judgment against St. Paul on its subrogation claim arising in connection with water damage to the Warwick Towers condominium during Tropical Storm Allison.

### Analysis

St. Paul raises six issues on appeal challenging the trial court's order granting summary judgment. The first five issues assail the grant of summary judgment on all causes of action asserted by St. Paul as subrogee based on a waiver of subrogation contained in a 1980 easement agreement. The sixth issue assails the grant of summary judgment on the merits of the nuisance and trespass causes of action.

The Hotel Appellees sought summary judgment under the traditional summary judgment standard. *See* Tex.R. Civ. P. 166a(c). They did not rely upon Rule 166a(i) or file a hybrid motion invoking both Rules 166a(c) and 166a(i). They attached the following documents to their summary judgment motion: (1) an affidavit signed by Ron Hoyl, the vice president of appellee Park Hotel Investments, LLC; (2) the 1980 easement agreement; (3) a 1983 amendment to the 1980 easement agreement; and (4) the Warwick Towers Declaration of Condominium.

A defendant who seeks a traditional summary judgment under Rule 166a(c) must demonstrate that the plaintiff has no cause of action as a matter of law. *E.g., Cullins v. Foster,* 171 S.W.3d 521, 530 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). A traditional summary judgment is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v.*

as to St. Paul when the Council and the other plaintiffs dismissed their claims in February 2005 because the trial court's May 2004 order encompassed summary judgment on grounds that the 1980 easement agreement's waiver of subrogation forecloses all causes of action St. Paul might pursue as subrogee. We do not address the merits of any issues other than subrogation, nuisance, and trespass in this opinion.

**2.** St. Paul filed a motion in this court after the panel opinion was issued seeking to substitute St. Paul for the Council pursuant to Texas Rule of Appellate Procedure 7.1(b). This court denied the motion. The Texas Supreme Court held that this court erred by not allowing St. Paul to amend its notice of appeal and remanded for further consideration. *Warwick Towers Council of Co–Owners,* 244 S.W.3d at 840. Accordingly, we construe St. Paul's substitution motion as a request to amend the notice of appeal under Texas Rule of Appellate Procedure 25.1(f) to name St. Paul Fire & Marine Insurance Company as the appellant. We grant the motion as construed and direct St. Paul to file an amended notice of appeal in this court within 10 days of the date on which this court's judgment issues.

*Martinez,* 941 S.W.2d 910, 911 (Tex.1997). When the defendant has carried its summary judgment burden, the burden shifts to the nonmovant to raise a material fact issue precluding summary judgment. *Virginia Indonesia Co. v. Harris County Appraisal Dist.,* 910 S.W.2d 905, 907 (Tex. 1995). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference, and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005).

## I. Waiver of Subrogation Under the 1980 Easement Agreement

St. Paul argues in its first issue that the 1980 easement agreement does not foreclose a subrogation claim against the Hotel Appellees. To address the merits of this argument, it is necessary to discuss certain real estate transactions undertaken in connection with construction of the Warwick Towers condominium in the early 1980s.

### A. The 1980 Easement Agreement

The Warwick Hotel was built in 1925; its ownership has changed multiple times over the years. The Warwick Towers condominium was built in 1982 on land formerly owned by the John W. Mecom Company.

In 1980, the condominium site was owned by Warwick Towers, Inc. At that time, the John W. Mecom Company owned the land on which the Warwick Hotel and the hotel garage were located. The hotel garage—located across Fannin Street from the hotel and next to the condominium site—had two underground levels and three above ground levels. Warwick Towers, Inc. planned to add two more parking levels and a roof deck on top of the existing Warwick Hotel garage for the condominium's use.

In anticipation of the condominium's construction, an easement agreement was signed on November 7, 1980 by the John W. Mecom Company as "Grantor" and Warwick Towers, Inc. as "Grantee." The 1980 agreement granted certain easements and collateral rights as to both the Mecom land—upon which the hotel garage was located—and the adjacent property owned by Warwick Towers, Inc.—upon which the condominium was to be built. Among other things, the John W. Mecom Company granted to Warwick Towers, Inc. an exclusive easement for air space above the Mecom land to accommodate the garage addition; a right of support for construction of additional garage levels; and a non-exclusive easement and right of way covering access to portions of the hotel garage and the Mecom land.

A First Amendment to Easement Agreement was executed on February 1, 1983 by Houston International Hotels, Inc.—as successor to "Grantor" Mecom— and Warwick Towers Venture—as successor to "Grantee" Warwick Towers, Inc. The 1983 amendment was made retroactively effective as of November 7, 1980. Among other things, the 1983 amendment made certain changes to the easements and rights granted under the 1980 easement agreement.

The Warwick Hotel's ownership is described in Hoyl's affidavit. Hoyl states that appellee Park Warwick, L.P. owned the hotel in 2004. This limited partnership was owned in 2004 by another appellee, Park Warwick Investments, LLC, as general partner of the limited partnership. The limited partnership's "managing member" in 2004 was appellee Park Hotel Investments, LLC. Although Hoyl's affidavit describes the hotel's ownership as of 2004, his affidavit is silent regarding ownership of the land on which the hotel and garage are located. Hoyl's affidavit also is silent

regarding changes in the hotel's ownership over time.

## B. Waiver of Subrogation

■ The Hotel Appellees moved for summary judgment based on a waiver of subrogation clause in an indemnity paragraph in the 1980 easement agreement.

The indemnity paragraph states as follows:

8.1 Grantee hereby agrees to indemnify and save harmless Grantor from all loss, cost, expense and liability arising from claims in connection with the construction, use or occupancy of the W/T Addition, the Air Space Easement, the W/T Equipment Easement, the W/T Utility Easement and all other rights and easements granted to Grantee hereunder, and Grantor hereby agrees to indemnify and save harmless Grantee from all loss, cost, expense and liability arising from claims in connection with the construction, use or occupancy of the Reserved Area and all easements granted to Grantor hereunder. *Grantor and Grantee, in [sic] behalf of their insurors [sic], do hereby waive all rights of subrogation which such insurors [sic] may become entitled to as against Grantee, or Grantor, as the case may be.*

(emphasis added). The Hotel Appellees also rely on the following clauses:

10.5 It is intended and shall be understood that (i) each and every right, easement, benefit or interest herein granted and conveyed to or vested in Grantee shall be appurtenant to Grantee's interest in the W/T Land and shall extend to each future owner thereof, and (ii) each and every right, easement, benefit or interest herein reserved, granted and conveyed to or vested in Grantor shall be appurtenant to Grantor's interest in the Mecom Land and shall extend to each future owner thereof.

\* \* \*

19.1 The terms and provisions hereof shall be deemed to be covenants running with the Mecom Land and the W/T Land, and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, as owners of such properties.

Under these provisions, the right to enforce the waiver of subrogation is tied to ownership of the grantor's interest in the "Mecom Land"—not to ownership of "The Warwick, a hotel in Houston, Texas."

St. Paul argued in its summary judgment response that material issues of disputed fact exist regarding (1) whether St. Paul waived any rights against the Hotel Appellees; (2) whether the waiver applies to St. Paul; and (3) the waiver's meaning and reach. On appeal, St. Paul argues that the Hotel Appellees proffered no evidence to establish that they (1) acquired the grantor's interest in the "Mecom Land;" or (2) are successors or assigns of the grantor's right to enforce the waiver of subrogation under the 1980 easement agreement.

The Hotel Appellees contend that St. Paul waived its argument regarding absent proof by failing to raise this argument in its summary judgment response. *See* Tex.R. Civ. P. 166a(c). In addressing the Hotel Appellees' waiver argument, we focus on the specific type of summary judgment motion that was filed.

■ The Hotel Appellees filed a traditional motion for summary judgment invoking only Rule 166a(c). A nonmovant has no burden to respond to a traditional summary judgment motion unless the movant conclusively establishes its cause of action or defense. *See, e.g., M.D. Anderson Hosp. v. Willrich,* 28 S.W.3d 22,

23 (Tex.2000) (per curiam). Because traditional summary judgments must stand on their own merits, the nonmovant can argue on appeal that the movant's proof is insufficient as a matter of law to support summary judgment even if the nonmovant did not respond in the trial court. *Id.* (citing *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999), and *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979)). Therefore, we will consider St. Paul's argument that the Hotel Appellees' summary judgment evidence is insufficient as a matter of law to establish that they acquired the grantor's interest in the "Mecom Land" and can enforce the waiver of subrogation. *See id.*

■■■ A court applies basic principles of contract construction and interpretation when considering an express easement's terms. *Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 700 (Tex.2002). When the grant's terms are not specifically defined, we must give them their plain, ordinary, and generally accepted meaning. *Id.* at 701. Pursuant to the plain language of paragraphs 10.5 and 19.1, the grantor's rights under the waiver of subrogation clause pass to "future owner[s]" of "Grantor's interest in the Mecom Land." The Hotel Appellees do not argue otherwise. Instead, they contend that two affidavits signed by Ron Hoyl adequately identify them as owners of "Grantor's interest in the Mecom Land."

■■ Hoyl's first affidavit contains the following: "I have personal knowledge of the ownership of The Warwick, a hotel in Houston, Texas. The Warwick is owned by Park Warwick, L.P. which in turn is owned by Park Warwick Investments, LLC, its general partner and I am an officer of its managing member, Park Hotel Investments, LLC." At most, Hoyl's first affidavit establishes that "Park Warwick, L.P." owns "The Warwick, a hotel in Houston, Texas." Improvements and land are separate estates or interests under Texas property law. *See Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.,* 140 S.W.3d 833, 837 (Tex.App.-Austin 2004, no pet.); *Franz v. Katy Indep. Sch. Dist.,* 35 S.W.3d 749, 755 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Hoyl's affidavit does not address ownership of the grantor's interest in the "Mecom Land." Therefore, Hoyl's first affidavit does not establish that the entity called "Park Warwick, L.P." or the other two Hotel Appellees own the "Mecom Land" or succeeded to Mecom's rights to enforce the waiver of subrogation.

In his second affidavit, Hoyl states that he is the appellees' records custodian and recites the business records litany under Texas Rule of Evidence 803(6). The second affidavit says nothing about ownership of the Mecom land or successor status under the 1980 easement agreement.

On this record, the Hotel Appellees have not established their ownership of the "Mecom Land" and have not established any basis upon which they can enforce waiver of subrogation rights as the grantor's successors under the 1980 easement agreement. *See Barnes v. Wendy's Int'l, Inc.,* 857 S.W.2d 728, 730 (Tex.App.-Houston [14th Dist.] 1993, no writ) (contract confers rights and duties only on actual parties to the contract and courts should not construe a contract as having been made for benefit of third parties unless it clearly appears contracting parties intended third-party to benefit). The summary judgment proof is insufficient as a matter of law to establish that the waiver of subrogation clause applies here to foreclose St. Paul's subrogation claim against these appellees.

We sustain St. Paul's first issue and remand for further proceedings not inconsistent with this opinion. We do not ad-

dress St. Paul's second through fifth issues, which address alternative arguments for reversing the partial summary judgment on St. Paul's subrogation claim.

## II. Nuisance and Trespass

In its sixth issue, St. Paul contends the trial court erred by granting summary judgment in favor of the Hotel Appellees on St. Paul's nuisance and trespass causes of action.

Although the Hotel Appellees told the trial court they were submitting their motion "under the traditional summary judgment standard," they attached no evidence addressing these causes of action. Instead, the Hotel Appellees requested summary judgment on the pleadings with respect to the nuisance and trespass causes of action.

"A summary judgment should not be based on a pleading deficiency that could be cured by amendment." *In re B.I.V.,* 870 S.W.2d 12, 13–14 (Tex.1994) (per curiam); *see also Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). That is the role of special exceptions, which provide the nonmovant an opportunity to amend before dismissal. *E.g., Centennial Ins. Co. v. Commercial Union Ins. Cos.,* 803 S.W.2d 479, 482–83 (Tex.App.-Houston [14th Dist.] 1991, no writ); *see also* Tex.R. Civ. P. 90, 91. A nonmovant waives a complaint that summary judgment improperly was granted on the pleadings by failing to raise it. *San Jacinto River Auth. v. Duke,* 783 S.W.2d 209, 210 (Tex.1990); *Ross v. Arkwright Mut. Ins. Co.,* 933 S.W.2d 302, 305 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

St. Paul did not object to the Hotel Appellees' request for summary judgment on the pleadings with respect to the nuisance and trespass causes of action, and it did not request an opportunity to amend.

Therefore, we review the propriety of summary judgment based on the nonmovant's pleadings. *See Sw. Invs. Diversified, Inc. v. Estate of Mieszkuc,* 171 S.W.3d 461, 470 (Tex.App.-Houston [14th Dist.] 2005, no pet.). To determine whether a cause of action exists under the circumstances pleaded, we assume that all facts alleged by the nonmovant are true and indulge all reasonable inferences in the light most favorable to the nonmovant. *Id.* We do not assume that any legal conclusions stated in the pleadings are true. *Id.* at 470–71.

### A. Nuisance

A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 269 (Tex.2004). "Nuisance" refers to a kind of damage done, rather than to any particular type of conduct. *City of Tyler v. Likes,* 962 S.W.2d 489, 504 (Tex.1997) (citing Prosser, *Nuisance Without Fault,* 20 Tex. L. Rev. 399, 416–17 (1942)). An actionable nuisance may arise from an invasion of another's interests attributable to activity that is intentional, negligent, or abnormal and out of place in its surroundings. *Hicks v. Humble Oil & Refining Co.,* 970 S.W.2d 90, 96 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); *Likes,* 962 S.W.2d at 503.

The original petition alleged damage to the condominium resulting from a single flooding incident on June 9, 2001. St. Paul incorporated its negligence allegations into its nuisance claim, and also specifically alleged that the Hotel Appellees failed

to maintain, use, operate, install and/or erect and/or safely and properly maintain, use, operate, install and/or erect its

flood gate, barrier and/or device and/or flood logs at the driveway entrance to the loading dock at The Warwick Hotel to protect Plaintiffs' property, and thus, caused and allowed water to enter the hotel, to flood the hotel, to cross the hotel/towers tunnel beneath Fannin Street, and to enter and flood the Warwick Towers.

As they did in their summary judgment motion, the Hotel Appellees argue on appeal that St. Paul cannot recover under a nuisance theory because the alleged damages resulted from a discrete flooding incident rather than a continuing or repetitive event. The Hotel Appellees also argued in the trial court that a nuisance claim is foreclosed because the damage did not result from a condition inherent in the Hotel Appellees' property independent of any negligent or improper use of that property. The Hotel Appellees do not reassert the inherent condition argument on appeal; they argue only that "a single, isolated event cannot support a claim for nuisance." St. Paul contends that a nuisance action against a private entity in Texas does not require proof of a continuing or repetitive occurrence. St. Paul also proffered an affidavit from James Dorn, a licensed professional civil engineer, as part of its summary judgment response. Among other things, Dorn's affidavit states as follows: "The June 9, 2009 incident was the third flood incident at the Warwick Hotel where water entered the hotel from the loading dock entrance. Previous water intrusion incidents occurred at the loading dock entrance to the hotel in 1974 and 1994 according to the Warwick Hotel's general manager." The Hotel Appellees did not object to this statement below.

Asking whether "a single, isolated event" can support "a claim for nuisance" begs the following question: What *type* of "claim for nuisance" is being asserted? The issue is bound up in a larger question regarding proper characterization of the asserted nuisance as "temporary" or "permanent." The Texas Supreme Court addressed the mutually exclusive distinction between temporary and permanent nuisances at length in *Schneider Nat'l Carriers, Inc.*, 147 S.W.3d at 275–83. In so doing, the supreme court discussed the concept of "frequency and constancy" as it relates to the viability of particular nuisance claims under particular circumstances. *Id.* at 283.

The supreme court grounded its analysis on "the substantial consequences that flow from designating a nuisance as temporary or permanent...." *Id.* at 276. The supreme court has recognized three consequences that "result from categorizing a nuisance as permanent or temporary: (1) whether damages are available for future or only past injuries; (2) whether one or a series of suits is required; and (3) whether claims accrue (and thus limitations begins) with the first or each subsequent injury." *Id.* at 275.

Addressing the first consequence, the supreme court noted that a landowner asserting a claim for temporary nuisance may recover only damages that already have accrued. *Id.* at 276. "Conversely, if a nuisance is permanent, the owner may recover lost market value...." *Id.* "An *isolated occurrence* may result in temporary loss of use and enjoyment, but is unlikely to result in permanent loss of market value unless the damage cannot be remedied or is likely to occur again." *Id.* (emphasis added). "[I]f a nuisance is likely to create flooding only during a hurricane, the infrequency and unpredictability of such a disaster may make future losses difficult to evaluate, thus requiring a landowner to await actual damage before filing suit." *Id.* at 277.

Turning to the second consequence, the supreme court stated: "[I]f future harm is anyone's guess, the nuisance is a temporary one and a claimant must bring a series of suits involving the same parties, pleadings, and issues as each injury occurs." *Id.* at 278. "Requiring separate suits for separate injuries is feasible if injury occurs once a decade." *Id.*

As for the third consequence, the supreme court noted that the "general rules for limitations place the relative terms used to describe temporary and permanent nuisances in context." *Id.* at 280. "If noisome conditions occur only once, the nuisance will normally be temporary because it creates *substantial interference* with property on that occasion, but not on any other." *Id.* (original emphasis).

■■■ *Schneider National Carriers, Inc.* teaches that a temporary nuisance claim can arise in appropriate circumstances from "the first ... injury," or from "an isolated occurrence," or from "noisome conditions [that] occur only once." *Id.* at 277, 280. A nuisance claim also can arise in other circumstances. The consequence of attempting to predicate a particular nuisance claim upon "the first ... injury" or an "isolated occurrence" or a "noisome condition[ ]" that "occur[s] only once" is not necessarily automatic dismissal. Rather, the consequence is felt in the direction of subsequent litigation shaped by rules governing the measure of damages, the number of required suits, and accrual. *See id.* at 275–83.

Determining whether the appropriate circumstances exist here to allow a nuisance claim requires speculation at this stage of the proceedings. We are presented with a document styled as a "traditional motion for summary judgment" seeking dismissal on the pleadings of a broadly pleaded claim for "nuisance" to which no special exceptions were filed. The circum-

stances present in this case may accommodate a nuisance claim, or they may not. The answer to that question will depend in part on whether the claim is characterized as a temporary or permanent nuisance; how the claim is developed; and how it is presented on the facts. At this stage we cannot say that such a claim is foreclosed as a matter of law under the governing standard of review.

The Hotel Appellees cite a handful of cases predating *Schneider National Carriers, Inc.* for the proposition that a single, temporary flooding incident cannot support a nuisance claim of any kind. *See Wickham v. San Jacinto River Auth.,* 979 S.W.2d 876, 880 (Tex.App.-Beaumont 1998, pet. denied); *Sutton Bldg. Ltd. v. Travis County Water Dist. 10,* No. 03–02–00659–CV, 2004 WL 1404045, at *5 (Tex.App.-Austin June 24, 2004, no pet.) (mem. op.); *Maverick County Water and Improvement Dist. No. 1 v. Reyes,* No. 04–03–00421–CV, 2003 WL 22900914, at *3 (Tex.App.-San Antonio Dec. 10, 2003, no pet.) (mem. op.).

We ground our analysis on *Schneider National Carriers, Inc.* rather than these cases. We do so not only because *Schneider National Carriers, Inc.* is a subsequent pronouncement from the Texas Supreme Court, but also because the discussion in *Wickham, Sutton,* and *Reyes* arose in the context of sovereign immunity analysis that does not apply here.

■■■ "Governmental entities may be liable for nuisances created or maintained in the course of non-negligent performance of governmental functions." *Wickham,* 979 S.W.2d at 880 (citing *Likes,* 962 S.W.2d at 503–04). "As such, sovereign immunity is not a defense to a claim on non-negligent nuisance." *Id.* (citing *Shade v. City of Dallas,* 819 S.W.2d 578, 581 (Tex.App.-Dallas 1991, no writ)). These cases are inapposite because they discussed frequen-

cy of occurrence in the course of determining whether there was anything inherent in the nuisance-causing object beyond the object's alleged improper or negligent use. *See Wickham,* 979 S.W.2d at 880; *Sutton,* 2004 WL 1404045, at \*5; *Reyes,* 2003 WL 22900914, at \*3. That inquiry differs from the one we address today.

Accordingly, we sustain St. Paul's sixth issue with respect to the nuisance claim.

**B. Trespass**

 Trespass to real property requires a showing of an unauthorized physical entry onto the plaintiff's property by some person or thing. *Tex. Woman's Univ. v. Methodist Hosp.,* 221 S.W.3d 267, 286 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *Ronald Holland's A–Plus Transmission v. E–Z Mart Stores, Inc.,* 184 S.W.3d 749, 758 (Tex.App.-San Antonio 2005, no pet.). The entry need not be in person but may be made by causing or permitting a thing to cross the boundary of a property. *Id.* Trespass usually is regarded as an intentional tort in the sense that it involves an intent to commit an act that violates a property right, or would be practically certain to have that effect, although the actor may not know the act he intends to commit is such a violation. *Harris County v. Cypress Forest Pub. Util. Dist.,* 50 S.W.3d 551, 554 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

 St. Paul incorporated its negligence and nuisance allegations into its trespass claim and also asserted as follows:

Defendant PARK WARWICK's actions, inactions and/or omissions interfered with and invaded Plaintiffs' property and proximately caused Plaintiffs' damages, as described . . . above. Without Plaintiffs' authorization or permission, PARK WARWICK invaded and/or caused to be invaded Plaintiffs' respective properties by failing and/or refusing to maintain, use, operate, install and/or erect and/or safely and properly maintain, use, operate, install and/or erect its flood gate, barrier and/or device and/or flood logs at the driveway entrance to the loading dock at The Warwick Hotel, and thus, caused and allowed water to enter the hotel, to flood the hotel, to cross the hotel/towers tunnel beneath Fannin Street, and to enter and flood the Warwick Towers. PARK WARWICK knew or should have known that its actions, inactions and/or omissions would cause water to flood and invade Plaintiffs' property. PARK WARWICK [sic] acts and/or omissions proximately caused damage to Plaintiffs as described . . . above.

St. Paul's allegations against the Hotel Appellees track those at issue in *Texas Woman's University,* another case arising in connection with Tropical Storm Allison. *See Tex. Woman's Univ.,* 221 S.W.3d at 285–86. The strong similarity between these two cases warrants further discussion.

Like the Warwick Towers, Texas Woman's University suffered damage during Tropical Storm Allison when water entered its facilities in the Texas Medical Center through a tunnel. *Id.* at 270–76. The university sued Methodist Hospital and asserted a claim for trespass, among other causes of action, in connection with the storm. *Id.* The university predicated its suit in part on allegations that (1) Methodist "owned 'flood logs . . . to block the entry of water into [Methodist] in the event that rain run-off water levels rose in front of the driveways and other entrances to [Methodist];' " (2) Methodist failed to install the flood logs during the storm; and (3) as a result, " 'surface run-off rain water entered [Methodist] . . ., was allowed to exit Methodist, traveled and over-

flowed the [t]unnel, and overflowed and flooded the TWU Campus.'" *Id.* at 270–71.

The trial court granted summary judgment in favor of Methodist Hospital on all causes of action asserted by the university. The First Court of Appeals affirmed in part and reversed in part. As relevant here, the appellate court affirmed summary judgment in favor of Methodist Hospital on the university's trespass claim because the circumstances did not involve an intent "to commit a trespass that violated TWU's property rights or would be practically certain to violate TWU's property rights." *Id.* at 286. "TWU's allegations concerning Methodist's failure to act are necessarily based on Methodist's negligence in failing to take proper flood prevention procedures, not on an intentional act." *Id.*

These words apply with equal force to St. Paul's trespass claim against the Hotel Appellees predicated on similar allegations involving an asserted failure to use a flood barrier. The trespass claim incorporates negligence and nuisance allegations regarding the Hotel Appellees' asserted failure to act; it is not predicated on a contention that the Hotel Appellees committed an intentional act that violates a property right or would be practically certain to have that effect. *See id.* Therefore, St. Paul's trespass claim fails as a matter of law. *See Mountain States Tel. & Tel. Co. v. Vowell Constr. Co.,* 161 Tex. 432, 435–36, 341 S.W.2d 148, 150 (1960) (viable trespass claim predicated on road scraper being "deliberately and intentionally used in making a cut to the designated subgrade," thereby severing a cable); *see also Cypress Forest Pub. Util. Dist.,* 50 S.W.3d at 554; *Jamison v. Nat'l Loan Investors, L.P.,* 4 S.W.3d 465, 469 n. 2 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); *Malouf v. Dallas Athletic Country Club,* 837 S.W.2d 674, 676 (Tex.App.-Dallas 1992,

writ dism'd w.o.j.); *Gen. Tel. Co. v. Bi–Co Pavers, Inc.,* 514 S.W.2d 168, 170 (Tex.Civ. App.-Dallas 1974, no writ); *First City Nat'l Bank v. Japhet,* 390 S.W.2d 70, 74–75 (Tex.Civ.App.-Houston 1965, writ dism'd). The cases upon which St. Paul relies likewise address distinguishable circumstances involving the intentional commission of an affirmative act. *See Nugent v. Pilgrim's Pride Corp.,* 30 S.W.3d 562, 565–66 (Tex. App.-Texarkana 2000, pet. denied) (dumping of noxious chemicals and chicken waste, which rainwater then carried onto plaintiffs' land); *Schronk v. Gilliam,* 380 S.W.2d 743, 744 (Tex.Civ.App.-Waco 1964, no writ) (aerial spraying of substances on plaintiffs' crops and pasture when substances were intended for use on other land); *McDaniel Bros. v. Wilson,* 70 S.W.2d 618, 620 (Tex.Civ.App.–Beaumont 1934, writ ref'd) (excavating land on own lot, which resulted in retaining wall failure after heavy rain and damage to plaintiffs' building on adjoining lot).

The trial court correctly granted partial summary judgment in favor of the Hotel Appellees on St. Paul's trespass claim. We overrule St. Paul's sixth issue with respect to the trespass claim.

## Conclusion

We affirm that portion of the judgment dismissing the trespass cause of action. We reverse that portion of the judgment dismissing the nuisance claim and St. Paul's subrogation claim, and remand the cause for further proceedings consistent with this opinion.