# NO. 12-08-00340-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DR. LEE ROY MATHIS,* *APPELLANT* | § | *APPEAL FROM THE 87TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *H.E. "BUSTER" BARNES,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *OPINION*

Dr. Lee Roy Mathis appeals the trial court's take nothing judgment entered in favor of Appellee H.E. Buster Barnes. In two issues, Mathis contends that the evidence is legally and factually insufficient to support the trial court's take nothing judgment and this court should render injunctive relief against Barnes. We affirm in part, reverse and remand in part, and dismiss for want of jurisdiction in part.

## BACKGROUND

Mathis and Barnes own adjoining property in rural Anderson County, Texas. Lake Creek runs through the two properties at a point where Barnes's property lies approximately six inches lower in elevation than Mathis's property. For some time, Mathis had sought to cultivate "pristine wetlands" on the portion of his property close to Barnes's property. Due to multiple beaver dams on Mathis's property and in spite of seasonal rainfall variations, it was "full of water year round[,]" with "very limited" seasonal fluctuation. As a result, the property was a watering, nesting, and roosting place for waterfowl.

In mid to late 2006, Barnes constructed an earthen road on his property. The road, in effect, served as a dam where it crossed Lake Creek.[1] According to Barnes's testimony, he initially incorporated two twenty-eight inch culverts into the road. However, even though Barnes testified that he had constructed numerous roads in the past, he did not consult an engineer regarding his construction of this road.

By October 2006, Lake Creek's water flow increased and water began to rise on Barnes's property upstream of the road. By November 3, 2006, the water had crossed the property line between Mathis's and Barnes's properties.

On November 4, 2006, Mathis contacted Barnes concerning the rising water and asked him to modify the road to permit sufficient flow of the water to alleviate the flooding. Barnes met with Mathis and his son, Rusty, about the problem.

As time passed, the water continued to rise. By mid December, the water was several feet high at the fence line and had begun to crest at some of the beaver dams. Rusty contacted Barnes about the problem, and Barnes responded that he would add another culvert to the road. Thereafter, Barnes installed another twenty-eight inch culvert in the road above the two previously installed culverts. In mid to late December 2006, the road gave way to the waters of Lake Creek. The waters retreated from Mathis's property revealing the remnants of many of the beaver dams that did not survive. As a result of the destruction of the beaver dams, the property retains a significantly smaller amount of water than it once did. Furthermore, the duck sightings on or above the property have been greatly reduced.

Mathis filed the instant suit on January 26, 2007 alleging that Barnes was liable to him for nuisance, trespass, negligence, and gross negligence. Specifically, Mathis claimed that Barnes's actions permanently damaged 409.27 acres of his land, thereby reducing its fair market value, which resulted in actual damages. Mathis further sought injunctive relief. The trial court granted Mathis both a temporary restraining order and, later, a temporary injunction, prohibiting Barnes from repairing the breached road across Lake Creek. The matter proceeded to a jury trial. At trial, Barnes did not dispute that he built the road across Lake Creek. The parties presented conflicting evidence regarding the monetary value of the property before and after the flooding. The testimony can be summarized as follows: Mathis put on testimony of various witnesses

---

[1] The parties' terminology varies with regard to Barnes's construction across Lake Creek. For ease of reference, we refer to Barnes's structure as the "road." The record reflects that at the time the road was constructed, Lake Creek was dry at the construction site.

2

supporting that the value of the property was greatly diminished; Barnes's witness, a real estate appraiser, testified that the value of the property was the same both before and after the incident.

Ultimately, the jury found that Barnes was not liable for nuisance, trespass, negligence, or gross negligence. Thereafter, the trial court entered a take nothing judgment against Mathis. Mathis filed a motion for new trial, which the trial court denied. This appeal followed.

## LEGAL SUFFICIENCY

In his first issue, Mathis argues that the evidence is legally and factually insufficient to support the jury's finding of no liability with regard to his causes of action for nuisance, trespass, and negligence. Mathis further argues that the evidence conclusively establishes his claim for gross negligence.

### Standard of Review

If a party with the burden of proof challenges the legal sufficiency of an adverse finding, we must determine whether the complaining party has demonstrated on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In a "matter of law" challenge, we first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, we will examine the entire record in order to determine whether the contrary proposition is established as a matter of law. *Id.* We will sustain the issue if the contrary proposition is conclusively established. *Id.* The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In making this determination, we must credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. *Id.* at 827. The finder of fact is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied) (citing *City of Keller*, 168 S.W.3d at 819). The finder of fact is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* Accordingly, we must assume that the finder of fact decided all credibility questions in favor of the findings if a reasonable person could do so. *Id.* If a reasonable finder of fact could have done so, we must assume that the finder of fact chose what testimony to

3

disregard in a way that favored the findings. *See Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 820). A finder of fact "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses" where reasonable. *Canal*, 238 S.W.3d at 557 (quoting *City of Keller*, 168 S.W.3d at 819–20).

Moreover, it is within the finder of fact's province to resolve conflicts in the evidence. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 820). Consequently, we must assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner consistent with the findings. *Id.* Where a reasonable finder of fact could resolve conflicting evidence either way, we must presume the finder of fact did so in favor of the findings. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 821). Where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* Therefore, we must assume the finder of fact made all inferences in favor of the findings if a reasonable person could do so. *Id.*

## Nuisance

Mathis first argues that the evidence conclusively establishes that Barnes is liable to him for creating a private nuisance. A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004); *Warwick Towers Council of So-Owners v. Warwick, L.P.*, 298 S.W.3d 436, 444 (Tex. App.–Houston [14th Dist.] 2009, no pet.). "Nuisance" refers to a kind of damage done, rather than to any particular type of conduct. *City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex. 1997). A private nuisance affects an individual or a small number of individuals rather than the public at large. *See Walker v. Tex. Elec. Serv.*, 499 S.W.2d 20, 27 (Tex. App.–Fort Worth 1973, no writ). An actionable nuisance may arise from an invasion of another's interests attributable to activity that is intentional, negligent, or abnormal and out of place in its surroundings. *Warwick*, 298 S.W.2d at 444.

To prove an action for private nuisance, the plaintiff must establish that the nuisance caused some injury. *See Walton v. Phillips Petroleum Co.*, 65 S.W.3d 262, 270 (Tex. App.–El Paso 2001, pet. denied). A nuisance may result in two types of injury: (1) physical harm to the plaintiff's property, as by the encroachment of a damaging substance or by the property's

4

destruction or (2) physical or emotional harm to the plaintiff. *See Aguilar v. Morales*, 162 S.W.3d 825, 836 (Tex. App.–El Paso 2005, pet. denied); *Union Pac. Res. v. Cooper*, 109 S.W.3d 557, 560 (Tex. App.–Tyler 2003, pet. denied); *Walton*, 65 S.W.3d at 270. A nuisance that impairs comfortable enjoyment of real property may give rise to damages for personal discomfort and annoyance. *See Cain v. Rust Indus. Cleaning Servs.*, 969 S.W.2d 464, 470 (Tex. App.–Texarkana 1998, pet. denied). A plaintiff is injured by a nuisance when the plaintiff suffers emotional harm from the deprivation of the enjoyment of his property, such as by fear, apprehension, offense, or loss of peace of mind. *See id.*

In the case at hand, Question 2 of the court's charge made the following inquiry of the jury:

> Did H.E. "Buster" Barnes create a nuisance which caused damage to Dr. Lee Roy Mathis'[s] land?
>
> A "nuisance" substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy the land. A "nuisance" may occur as:
>
> 1. Physical harm to property;
>
> 2. Physical harm to a person or his or her property, such as an assault to his or her senses or by other personal injury; and/or
>
> 3. Emotional harm to a person from the deprivation of the enjoyment of his or her property, such as by fear, apprehension, offense[,] or loss of peace of mind.

The jury answered "No" in response to Question 2.

Barnes contends that the jury was entitled to find that Barnes's action did not damage Mathis's land. In support of his contention, Barnes notes that (1) Mathis's pleadings allege that Barnes's actions permanently damaged 409.27 acres of his land, thereby reducing its fair market value, (2) Mathis submitted Question 2, which makes reference to a nuisance, that "caused damage," and (3) finally, Question 5 of the court's charge inquires of the jury concerning the "market value" of Mathis's property immediately before and immediately after the occurrence in question. Thus, according to Mathis, the jury was entitled to conclude, for the purpose of its answer to Question 2 that Barnes's creation of a nuisance did not "cause damage" to Mathis's land if it determined that the nuisance did not result in a reduction of the land's fair market value. We disagree.

5

The word "damage" means "injury" or "loss" caused by the negligence, design, or accident of one person to another in respect to the latter's person or property. *See* BLACK'S LAW DICTIONARY 389 (6th ed. 1990). The word "damage" is to be distinguished from its plural, "damages," which means a compensation in money for a loss or damage. *See id.* We understand "damage" to encompass every loss or diminution of what is a man's own, occasioned by the fault of another. *Id.* Mathis pleaded "permanent" injury. However, no liability question in the court's charge made inquiry concerning any permanent damage or injury. Furthermore, Question 5's inquiry concerning market value could not serve to define "damage" for the jury because the jury was instructed to answer Question 5 only if it answered "yes" to Questions 1, 2, or 3. *See Herrera v. Balmorhea Fedders, Inc.*, 539 S.W.2d 84, 87 (Tex. Civ. App.–El Paso 1976, writ ref'd n.r.e.) (court presumes jury followed trial court's instructions in charge).

In the instant case, Question 2 inquired whether Barnes created a nuisance that caused damage to Mathis's land. The evidence of record is uncontradicted that (1) Barnes constructed the road across Lake Creek, (2) the road Barnes constructed disrupted the creek's natural flow, (3) the waters of Lake Creek rose upstream of the road and eventually crossed the Barnes-Mathis property line, flooding a portion of Mathis's land. Furthermore, the evidence is conclusive that Mathis had owned the property for approximately forty years and used the land in question as a site on which to cultivate wetlands, which facilitated his further use of the land as a watering, nesting, and roosting place for waterfowl. Finally, the evidence is uncontroverted that, after the flood waters receded, the beaver dams that once occupied the property were no longer functional. As a result, the property retains a significantly smaller amount of water than it once did and duck sightings on or above the property have been greatly reduced. Thus, based on our review of the record, we conclude that the evidence conclusively established that Barnes created a nuisance that caused physical damage to Mathis's property. Consequently, we hold that the evidence is legally insufficient to support the jury's "No" answer to Question 2 of the court's charge.

**Trespass**

Mathis next argues that the evidence conclusively establishes that Barnes is liable to him for trespass.[2] Question 3 of the court's charge inquired of the jury concerning trespass as follows:

---

[2] An action can be both a trespass and a nuisance. *See Rankin v. FPL Energy, LLC*, 266 S.W.3d 506, 509 (Tex. App.–Eastland 2008, no pet.).

6

Did H.E. "Buster" Barnes cause damage to Dr. Mathis'[s] land by trespassing on Dr. Lee Roy Mathis'[s] land.

A trespass is any unauthorized intrusion or invasion of private premises or land of another, committed when a person enters another's land without consent; or alternatively, unauthorized entry upon land of another. For purposes of a trespass claim, entry need not be in person, but may be made by causing or permitting something to cross the boundary of the property of another.

The jury answered "No" in response to Question 3.

Trespass to real property is defined as an unauthorized entry upon the land of another. *See Cain v. Rust Indus. Cleaning Servs.*, 969 S.W.2d 464, 470 (Tex. App.–Texarkana 1998, pet. denied); *Stone Res. v. Barnett*, 661 S.W.2d 148, 151 (Tex. App.–Houston [1st Dist.] 1983, no writ).[3] Every unauthorized entry is a trespass even if no damage is done. *Aguilar v. Trujillo*, 162 S.W.3d 839, 851 (Tex. App.–El Paso 2005, pet. denied) (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827 (Tex. 1997)); *see also Johnson v. Phillips Petroleum Co.*, 93 S.W.2d 556, 558–59 (Tex. App–Amarillo 1936, no writ) (presumed that some injury resulted from trespass even if damages are nominal because every unauthorized entry on property considered a trespass). A trespass can be either by entry of a person on another's land or by causing or permitting a thing to cross the boundary of the premises. *Aguilar,* 162 S.W.3d at 851.

It is undisputed that Mathis owned land adjoining Barnes's land and that the properties were divided by a fence. As set forth above, the evidence is uncontroverted that (1) Barnes constructed the road across Lake Creek, (2) the road Barnes constructed disrupted the creek's natural flow, (3) the waters of Lake Creek rose upstream of the road and eventually crossed the Barnes-Mathis property line, flooding a portion of Mathis's land. The record is further conclusive that Barnes was aware that the waters of Lake Creek had encroached on Mathis's property upstream of the road he constructed. Based on our review of the record, we conclude that the evidence at trial conclusively established that the road Barnes constructed caused the waters of Lake Creek to enter upon Mathis's property. Damage or injury is presumed as a result

---

[3] We recognize that the entry must be physical, intentional, and voluntary. *See Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.–Fort Worth 2006, pet. denied). However, the definition submitted to the jury does not contain this element, and the submission of Question 3 has not been challenged on appeal. As such, we do not include it in our consideration of the sufficiency of the evidence. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002) (when party in civil case raises proper objection to improper jury charge or instruction, appellate court measures sufficiency of evidence against jury charge or instruction that should have been given; if no objection made, or if incorrect objection made, appellate court measures sufficiency of evidence against jury charge or instruction actually given).

of the trespass.  *See Johnson*, 93 S.W.2d at 558–59.  Consequently, we hold that the evidence is legally insufficient to support the jury's "No" answer to Question 3 of the court's charge.

## Negligence

Mathis next argues that the evidence conclusively establishes that Barnes is liable to him for negligence.  Question 1 of the court's charge inquired of the jury with regard to negligence as follows:

> Did the negligence, if any, of H.E. "Buster" Barnes proximately cause the damage, if any, to Dr. Lee Roy Mathis'[s] land?

The jury answered "No" in response to Question 1.

### *Governing Law*

The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.  *Roberts v. TXU Energy Retail Co. LP*, 171 S.W.3d 901, 903 (Tex. App.–Beaumont 2005, no pet.).  A legal duty is breached when a defendant does not meet the required standard of care.  On appeal, Mathis cites Texas Water Code, section 11.086, which he contends imposed a legal duty upon Barnes not to divert or impound surface water such that it damages the land of another.  *See* TEX. WATER CODE ANN. § 11.086 (Vernon 2008).  Ordinarily, if the duty imposed by a statute creates civil liability for its violation, the standard of care will be defined by the statute.  *See, e.g., Sheppard v. Judkins*, 476 S.W.2d 102, 109 (Tex. App.–Texarkana 1971, writ ref'd n.r.e.) (violation of statute that requires person to stop at stop sign constitutes negligence per se).  Thus, the jury would ordinarily be asked not whether the defendant acted reasonably, but only whether the defendant violated the statute.  *See Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979).  However, in the instant case, the jury was never asked to consider whether Barnes, by his conduct, violated section 11.086.  Rather, the jury was instructed concerning the duty to use ordinary care.  Because no party has challenged the trial court's submission of Question 1 on appeal, we will conduct our analysis of the legal sufficiency of the evidence to support the jury's answer to Question 1 with regard to the charge given the jury.  *See Wolff*, 94 S.W.3d at 530.

"Ordinary care," is defined as what a person of ordinary prudence would or would not have done under the same or similar circumstances.  *See Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex. 1984).  In deciding whether there is a common law duty, courts apply the risk-

8

utility test.  *See Foster v. Denton Indep. Sch. Dist.*, 73 S.W.3d 454, 465 (Tex. App.–Fort Worth 2002, no pet.).  The factors used when applying the risk-utility test are the risk, foreseeability, and likelihood of injury balanced against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.  *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 405 (Tex. 2009).  When these factors are balanced, the most important factor to consider is the foreseeability of the risk.  *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).

Foreseeability requires only that the general danger be foreseeable, not the exact sequence of events that produced the harm.  *See Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999).  The test for foreseeability is whether (1) the injury is of a general character that might reasonably have been anticipated and (2) the injured party is situated in relation to the wrongful act so that injury to him or one similarly situated might reasonably have been foreseen.  *See id.*

The components of proximate cause are (1) cause-in-fact and (2) foreseeability.  *See Western Invs. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005); *HIS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).  The test for cause-in-fact, or "but for" causation, is whether the negligent act or some omission was a substantial factor in bringing about injury and whether the injury would have occurred without the act or omission.  *Western Invs.*, 162 S.W.3d at 551; *Mason*, 143 S.W.3d at 799.  The evidence must be sufficient for the jury to determine within a reasonable probability that the plaintiff's injury would not have occurred but for the defendant's negligence.  *See Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970).  There is no cause-in-fact when the defendant's negligence did nothing more than furnish a condition that made the injury possible or when the defendant's conduct is too remotely connected with the plaintiff's injury.  *See Mason*, 143 S.W.3d at 799.  To prove foreseeability, the plaintiff must establish that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission.  *See Doe v. Boys Clubs*, 907 S.W.2d 472, 478 (Tex. 2005); *PPC Transp. v. Metcalf*, 254 S.W.3d 636, 642 (Tex. App.–Tyler 2008, no pet.).  Foreseeability requires only that (1) the injury be of a general character that might reasonably have been anticipated and (2) the injured party be situated in relation to the wrongful act so that the injury to him or to someone similarly situated might reasonably have been foreseen.  *See Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 551 (Tex. 1985); *PPC Transp.*, 254 S.W.3d at 642.

Finally, with regard to damage, we iterate that the term "damage," which was not defined in the court's charge, means every loss or diminution of what is a man's own, occasioned by the fault of another." *See* BLACK'S LAW DICTIONARY 389.

### *Breach of Legal Duty*

We first consider whether Barnes breached a legal duty owed to Mathis. Here, the record is conclusive that the area between the Barnes and Mathis properties was "bottomland" with Mathis's land lying only six inches higher in elevation than Barnes's. The record further conclusively indicates that Barnes knew the land in question had flooded numerous times between the time when he purchased the property in 2005 and the time he built the road in 2006. Finally, it is uncontroverted that subsequent to Barnes's constructing the road, the water level rose upstream of the road and flooded Mathis's property.

However, the record also indicates that Barnes constructed the road across Lake Creek when the creek bed was dry. Further, there was evidence before the jury that Barnes had previous experience building roads utilizing culverts. Additionally, the evidence reflects that Barnes employed drainage pipes in his construction of the road at issue so as to allow the waters of Lake Creek to pass through it. There was evidence pertaining to whether anywhere from one to four twenty-eight inch culverts would permit adequate flow of the waters of Lake Creek. However, there is, at best, conflicting evidence concerning whether a person of ordinary prudence would have foreseen, as the record reflects Barnes did not, that the culverts he employed to allow for the passage of Lake Creek's waters would be less than adequate to prevent flooding upstream of the road. Moreover, there is, at best, conflicting evidence supporting that a person of ordinary prudence would have constructed the road so as to allow for more drainage than did Barnes.

In sum, the record does not conclusively demonstrate that an ordinarily prudent person would have foreseen that the construction of an earthen road across a creek bed, where measures were taken to allow for passage of the creek waters through the road, would, in spite of the measures taken, flood the neighboring property. Therefore, we conclude that the evidence does not conclusively demonstrate that Barnes breached his duty of ordinary care owed to Mathis. Accordingly, we hold that the jury's answer to Question 1 was not legally insufficient.

**Gross Negligence**

Mathis next argues that the evidence conclusively establishes that Barnes is liable to him for gross negligence. Question 4 of the court's charge inquired of the jury concerning gross negligence as follows:

> Do you find by clear and convincing evidence that the damage, if any, to Dr. Lee Roy Mathis'[s] land resulted from gross negligence?
>
> "Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.
>
> "Gross negligence means an act or omission by H.E. "Buster" Barnes,
>
> > a) Which when viewed objectively from the standpoint of H.E. "Buster Barnes at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
> >
> > b) Of which H.E. "Buster" Barnes has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Gross negligence includes two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998); *see Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994). Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence. *Ellender*, 968 S.W.2d at 921. Under the first element, "extreme risk" is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. *Id.* Under the second element, actual awareness means that the defendant knew about the peril, but his acts or omissions demonstrated that he did not care. *Id.* (citing *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993)). Circumstantial evidence is sufficient to prove either element of gross negligence. *See Moriel*, 879 S.W.2d at 22-23; *Alexander*, 868 S.W.2d at 327. Mathis cites *Boatman v. Lites*, 970 S.W.2d 41 (Tex. App.–Tyler 1998, no pet.) and *Bily v. Omni Equities, Inc.*, 731 S.W.2d 606 (Tex. App.–Houston [14th Dist.] 1987, writ ref'd n.r.e.) in support of his proposition that even where a defendant did not

11

originally intend that his actions result in an impounding of water upon the plaintiff's land, the second element of gross negligence is supported where the plaintiff intentionally permitted the impounding to continue.

In **Boatman**, the Boatmans built a "berm" that diverted surface water off of their property and onto the Liteses' neighboring property. *See **Boatman***, 970 S.W.2d at 46. When the Liteses asked the Boatmans to remove the berm, they refused to do so. *Id.* This court summarized the ensuing exchanges between the parties as follows:

> Approximately one year prior to the filing of this suit, the [Liteses] hired counsel to write the Boatmans, requesting that they refrain from diverting surface water. Mr. Boatman testified that he ignored the letter and thought it was ridiculous. When further pressed as to why he thought the request was ridiculous, he said "because I'm me and that's the way I think." After the trial court issued a temporary injunction ordering the Boatmans to remove the berm, they did not remove the dirt, but spread it out, further building up their property. When Mr. Lites attempted to talk to Mr. Boatman about the berm and the erosion problems, Mr. Boatman used profanity against him. The erosion caused by the building of the berm covered an area approximately seven feet by twenty feet. The eroded property was located at the extreme corner of the [Liteses'] property opposite from their home and not located within the vicinity of any other structures. On numerous occasions, the [Liteses] attempted to repair the damage done to their land, but were unable to do so.

*Id.* Considering the foregoing, this court concluded that (1) there was evidence that both the Liteses and the trial court informed the Boatmans that the diversion of surface water was causing damage to the Liteses' property, (2) the Boatmans denied that they had even built the berm despite evidence to the contrary, and (3) there was evidence that the Boatmans did not comply with the temporary injunction to refrain from diverting water from their property. *See id.* Accordingly, the court held that there was sufficient evidence to support a finding that the Boatmans were subjectively aware that they were creating a risk of damage to the Liteses' property. *See id.*

**Bily** likewise involved the diversion of surface waters by Omni onto Bily's property. *See **Bily***, 731 S.W.2d at 609. There, it was undisputed that Bily informed Omni and its owners, the Smiths, that their construction had blocked drainage from his property. *Id.* at 614. Further, Bily's attorney provided Omni with a copy of section 11.086 of the Texas Water Code. *Id.* W.T. Smith, the majority shareholder of Omni who oversaw its operations, admitted that he made no effort to correct the problem other than to file criminal complaints against Bily after the temporary injunction had been granted. *See id.* The court of appeals held that this was "some

12

evidence, and factually sufficient evidence," to support a finding that Omni and the Smiths acted with conscious indifference to Bily's rights. *See id.*

In the instant case, it is undisputed that Barnes was aware that the waters of Lake Creek had risen upstream of the road he constructed and had crossed the Barnes-Mathis property line, flooding a portion of Mathis's land. Barnes testified that he would never have constructed the road across Lake Creek had he known it would cause damage to Mathis's property. However, unlike the defendants in ***Bily*** and ***Boatman***, the record here indicates that Barnes cooperated with Mathis concerning the flooding problem. Furthermore, Barnes testified that he installed an additional culvert in order to alleviate the flooding on Mathis's land, a remedy he had previously discussed with Rusty. Ultimately, Barnes's attempt to solve the problem was unsuccessful, but his attempt is nonetheless some evidence that would reasonably support the jury's finding that he did not act with conscious indifference with regard to the flooding of Mathis's property. As such, we conclude that there was not conclusive evidence of gross negligence. Accordingly, we hold that the jury's "No" answer to Question 4 should not be disturbed.

## FACTUAL SUFFICIENCY

We test the factual sufficiency of the evidence by examining the entire record to determine whether a finding is clearly wrong and unjust. *See **Kinder Morgan North Tex. Pipeline, L.P. v. Justiss***, 202 S.W.3d 427, 437 (Tex. App.–Texarkana 2006, no pet.). When considering a factual sufficiency challenge to a jury's verdict, we must consider and weigh all the evidence, not just that evidence which supports the verdict. *See **Mar. Overseas Corp. v. Ellis***, 971 S.W.2d 402, 407 (Tex. 1998). We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. ***Id.***; ***Cain v. Bain***, 709 S.W.2d 175, 176 (Tex. 1986). We are not a fact finder. *See **Justiss***, 202 S.W.3d at 437. Accordingly, we may not pass on the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *See **Golden Eagle Archery, Inc. v. Jackson***, 116 S.W.3d 757, 761 (Tex. 2003); ***Ellis***, 971 S.W.2d at 407. If we find the evidence is factually insufficient, we must clearly state why the jury's finding is insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust. ***Pool v. Ford Motor Co.***, 715 S.W.2d 629, 635 (Tex. 1986).

13

In his brief, Mathis iterates the evidence underlying the damage he sustained as well as the evidence concerning the drainage methods Mathis employed in his construction of the road. Mathis further notes that Jerry Fontaine, a civil engineer, testified that even four twenty-eight inch culverts would have been inadequate to handle the water flow on Lake Creek.

We have examined the entirety of the record; we have considered and weighed all of the evidence. In so doing, we are mindful that we may not pass on the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *See Jackson*, 116 S.W.3d at 761. Based on our review of the record, we have not determined that any evidence tending to contradict the evidence supporting the jury's findings, including Fontaine's testimony, is of such character so as to cause us to conclude that the jury's "No" answer to Question 1 is clearly wrong and unjust. Thus, we hold that the evidence is not factually insufficient to support the jury's "No" answer to Question 1.

## SUMMATION OF ISSUE 1

We have concluded that the evidence is legally insufficient to support the jury's "No" answer to Questions 2, and 3 of the court's charge. We have further held that the jury's "No" answers to Questions 1 and 4 should not be disturbed. Accordingly, Mathis's first issue is sustained in part and overruled in part.[4]

## INJUNCTIVE RELIEF

In his second issue, Mathis argues that because the evidence conclusively establishes his claims, we should issue injunctive relief to prevent any future impoundment of the surface waters. We initially note that Mathis has neither cited authority nor made argument in support of his second issue. *See* TEX. R. APP. P. 38.1(i). Thus, Mathis has waived the issue.

Even so, we note that our authority to issue writs of injunction is limited to occasions where doing so is necessary to enforce our jurisdiction. *See* TEX. GOV'T CODE ANN. § 22.221(a) (Vernon 2004); *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 683 (Tex.1989) (purpose of writ of injunction is to enforce or protect appellate court's jurisdiction); *In re Sheshtawy*, 161 S.W.3d 1, 1 (Tex. App.–Houston [14th Dist] 2003, orig. proceeding). We may also grant

---

[4] Because we have held that the evidence is legally insufficient to support the jury's "No" answer to Questions 2 and 3 of the court's charge, we need not consider Mathis's arguments concerning the factual sufficiency of the evidence with regard to these findings. *See* TEX. R. APP. P. 47.1.

injunctive relief to preserve the subject matter of a pending appeal or if a failure to grant relief would result in the appeal becoming moot. *See **Becker v. Becker***, 639 S.W.2d 23, 24 (Tex. App.–Houston [1st Dist.] 1982, orig. proceeding). We do not have jurisdiction to issue a writ of injunction merely to preserve the status quo or prevent loss or damage to one of the parties during the appeal. ***Id.***; ***Pace v. McEwen***, 604 S.W.2d 231, 233 (Tex. Civ. App.–San Antonio 1980, orig. proceeding). Thus, even had Mathis not waived the issue, we are without jurisdiction to grant the injunctive relief Mathis requests.

## CONCLUSION

We have sustained Mathis's first issue in part and overruled it in part. We lack jurisdiction to grant the relief requested in Mathis's second issue. Mathis has prayed that we reverse the trial court's judgment, render judgment on liability, and remand the matter for a new trial on damages only. Because liability is contested, we cannot order a separate trial solely on damages. *See* TEX. R. APP. P. 44.1(b). Accordingly, we ***reverse*** the trial court's judgment with regard to Mathis's causes of action for nuisance and trespass and ***remand*** those causes of action for a new trial. We ***dismiss*** Mathis's request for injunctive relief for ***want of jurisdiction*** and ***affirm*** the remainder of the trial court's judgment.

SAM GRIFFITH
Justice

Opinion delivered July 14, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

15